UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF INDIANA
AT NEW ALBANY
CASE NUMBER _____

4 :15 -cv- 065 TWP -DML

JENNIFER SCHOOK                                                    PLAINTIFF
404 MAIN STREET
MILLTOWN, IN 47145

v.

AMAZON.COM.INDC LLC                                               DEFENDANT
4255 ANSON BLVD.
WHITESTOWN, IN 46075

      Serve:     CORPORATION SERVICE COMPANY
                251 E. OHIO STREET
                SUITE 500
                INDIANAPOLIS, IN 46204

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## VERIFIED COMPLAINT

Comes now the Plaintiff, Jennifer Schook, by and through counsel, and for her Complaint against the Defendant Amazon.Com.INDC, LLC, states and represents as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the Age Discrimination in Employment Act of 1967, as amended, at 29 U.S.C. §621, *et seq.* ("ADEA"), the Americans with Disabilities Act of 1990, as amended, at 42 U.S.C. §12101, *et seq.* ("ADA"), and relate to her employment with Defendant Amazon.Com.INDC LLC;

2. This Court has jurisdiction pursuant to the following statute:

    a.  28 U.S.C. §1331, which give district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.

3. That Defendant Amazon.Com.INDC LLC's discriminatory and tortious actions toward Plaintiff occurred in the store located in Jeffersonville, Clark County, Indiana;

4. All actions of which the Plaintiff complains herein occurred at Defendant Defendant Amazon.Com.INDC LLC's facility in Jeffersonville, Clark County, Indiana;

5. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred in this district.

## PARTIES

6. At all times relevant to this lawsuit, Plaintiff, Jennifer Schook, was a resident of Crawford County, Indiana.  The Plaintiff's residence is located at 404 Main Street, Milltown, Crawford County, Indiana 47145, and Plaintiff is an "employee" for the purposes of the ADEA and ADA;

7. At all times relevant to this lawsuit Plaintiff was employed by Defendant Amazon;

8. That the Defendant in this civil action is Defendant Amazon.Com.INDC (hereinafter "Defendant Amazon").  According to the Indiana Secretary of State, Defendant Amazon's principal place of business is located at 4255 Anson Boulevard, Whitestown, Indiana 46075;

9. That Defendant Amazon is foreign limited liability corporation. Its registered agent for Indiana is Corporation Service Company, located at 251 East Ohio Street, Indianapolis, Indiana 46204;

## FACTS

10. That Plaintiff incorporates all preceding paragraphs as if fully set forth herein;

11. That Plaintiff is forty-one (41) years-old;

12. That Plaintiff suffers from Type II Diabetes, is seventy percent (70%) deaf in her left ear, is forty percent (40%) deaf in her right ear, and thus, is disabled;

13. That Defendant Amazon employs more than twenty (20) employees for each working day in each of twenty (20) or more calendar weeks during the time at issue in this case;

14. That Plaintiff started her employment with Defendant Amazon on April 22, 2013, at Defendant Amazon's facility located at 900 Patrol Road, Jeffersonville, Clark County, Indiana 47130;

15. That this facility is referred to as "SDF8;"

16. That Plaintiff held the title of Studio Operations Associate I in the photography studio throughout the course of her employment with Defendant Amazon;

17. That Plaintiff was in a supervisor position;

18. That Plaintiff, while not holding the title, performed all of the responsibilities of safety manager for the photography studio at SDF8;

19. That these responsibilities, among others, included participating in weekly conference calls with Defendant Amazon's regional safety managers, maintaining

SDF8's safety film for the facility, maintaining SDF8's safety education material, and educating new associates in SDF8's safety processes and procedures;

20. That Plaintiff's immediate supervisor was Ms. Lisa Barnes, the Operations Manager at SDF8;

21. That to the best of Plaintiff's knowledge, Ms. Barnes is in her mid-to-late twenty's (20's);

22. That Plaintiff never received any formal training from Ms. Barnes;

23. That Plaintiff was forced to seek informal training in the policies, procedures, and processes used in the photography studio at SDF8 from other supervisors and temporary workers, provided by Integrity HR, Inc., ("Integrity");

24. That one of the operations supervisors Plaintiff sought help from was Ms. Norma Valdez;

25. That to the best of Plaintiff's knowledge, Ms. Valdez is in her mid-to-late (20's);

26. That about a month after Plaintiff began at SDF8, Ms. Barnes put Plaintiff in charge of operational aspects of the "Color Author" computer program;

27. That the "Color Author" program allows Defendant Amazon to digitally change the color of a piece of merchandise (such as a shirt, belt, purse, etc.,) a model is wearing by photographing the same piece of merchandise (in different colors) on a figurine in the photography studio at SDF8;

28. That when Plaintiff was initially put in charge of "Color Author," Defendant Amazon and Ms. Barnes' expectations were that twenty to forty (20-40) pieces of merchandise would be photographed daily;

29. That Plaintiff, in regard to the "Color Author" program, was responsible for ensuring the photography studio received all of the apparel necessary to meet Defendant Amazon's expectations for the day, moving the merchandise into the studio (digitally), verifying the counts of the merchandise, and ensuring that the merchandise reached its correct final destination once the photography studio was done photographing the merchandise;

30. That within Plaintiff's first two (2) months of being on "Color Author," Defendant Amazon and Ms. Barnes' daily expectations increased to five-hundred (500) to seven-hundred (700) pieces of merchandise;

31. That these increased expectations were entirely unreasonable, as Plaintiff did not have the necessary resources, nor the necessary training to meet such expectations;

32. That in order to meet the new expectations, Plaintiff repeatedly asked Ms. Barnes for more computers, more associates, and a sorting tool;

33. That Ms. Barnes did not provide any of the necessary resources mentioned above;

34. That Defendant Amazon would only hire temporary employees from Integrity to work in the photography studio;

35. That Defendant Amazon did hire more temporary employees to meet the increased expectations;

36. That the temporary employees that were hired by Defendant Amazon lacked the basic skills to effectively contribute to meeting the expectations, and were inept, in general;

37. That the issues above were complicated further by Ms. Barnes going on maternity leave in October 2013, which coincided with the beginning of the "peak" season for Defendant Amazon, as many customers start their holiday season shopping during the month of October;

38. That while Ms. Barnes was on maternity leave, Mr. Bryan Call became the Operations Manager at SDF8;

39. That as a result of the lack of necessary resources to effectively perform work tasks in the photography studio, Plaintiff and her aides made a few mistakes in regard to merchandise;

40. That as a result of the issues with "Color-Author," Plaintiff was reassigned to different job responsibilities in October 2013;

41. That Ms. Barnes was removed from the "Color-Author" program;

42. That Ms. Barnes, despite ignoring Plaintiff's repeated requests for necessary resources to fulfill her responsibilities in regard to "Color-Author," would later blame all of the issues that occurred on Plaintiff;

43. That Plaintiff became the overseer of three (3) different areas, including: 1) flats apparel, 2) tabletop sets, and 3) the tilt machine (which was for other shoes and accessories);

44. That Plaintiff's job responsibilities included managing the preparation, receiving, work flow, performance, and break times for each of the three (3) areas above;

45. That Plaintiff was responsible for coordinating the work of at least eighteen (18) employees in these areas, and as many as twenty-five (25) or more employees during "peak" season for Defendant Amazon;

46. That Plaintiff did not receive any formal training in regard to these new responsibilities, leaving Plaintiff to train herself, or seek help from fellow employees;

47. That further, Plaintiff repeatedly asked Ms. Barnes to receive training on how to perform all tasks in the operations department, yet, these requests fell on deaf ears;

48. That around the same time Plaintiff was reassigned, Defendant Amazon hired Ms. Shala Prim and Mr. Nathan Able as additional supervisors in the operations department;

49. That to the best of Plaintiff's knowledge, Ms. Prim is in her early-to-mid (30's);

50. That to the best of Plaintiff's knowledge, Mr. Able is in his early-to-mid (30's);

51. That Ms. Barnes was the immediate supervisor that Ms. Valdez, Ms. Prim, Mr. Able, and Plaintiff all reported to;

52. That due to the lack of any formal training in the three (3) new areas in the operations department she was responsible for, Plaintiff sought the help of Ms. Valdez, Ms. Prim, or Mr. Able;

53. That Ms. Valdez, Ms. Prim, and Mr. Able's primary responsibilities at SDF8 included running, making, and compiling various reports (what reports);

54. That, at most, the time necessary to complete the reports was one (1) hour;

55. That Mr. Call wanted Plaintiff to be able to complete the reports on her own, therefore, she asked her fellow supervisors for training in conducting the reports;

56. That Mr. Call even emphasized to her fellow supervisors that they should be helping Plaintiff learn the skills to perform all of the tasks in the Operations

Department during weekly operations department meetings so each supervisor could pick up the slack if one of the supervisors happened to be absent;

57. That each time Plaintiff asked for training from Ms. Valdez, Ms. Prim, or Mr. Able, she would be ignored or denied;

58. That further, each time Plaintiff asked for help in one of her areas from Ms. Valdez, Ms. Prim, or Mr. Able, she was ignored or denied;

59. That considering that Defendant Amazon begins its peak season in October, the amount of employees Plaintiff was responsible for, and her role as safety manager in the photography studio, the lack of assistance from her fellow operations supervisors made work responsibilities nearly impossible to achieve;

60. That the lack of assistance provided by her fellow operations supervisors was inexcusable not only because of the short amount of time necessary to complete the reports (which was their only major responsibility), but Ms. Valdez, Ms. Prim, and Mr. Able spent the majority of their days wasting time on activities not related to their work for Defendant Amazon;

61. That for example, on a number of occasions after she had requested help with a particular task, Plaintiff personally observed all three fellow operations supervisors surfing the internet (on sites such as Facebook), texting friends, or doing other non-work activities while on the clock;

62. That further, Plaintiff personally observed all three fellow operations supervisors receive unlimited training in processes and procedures utilized at SDF8, taking off work or leaving the facility when they wanted, and taking extended lunches;

63. That Ms. Barnes granted all of these privileges to Ms. Valdez, Ms. Prim, and Mr. Able, however, Plaintiff was never offered the same;

64. That as an egregious example of the behavior above, Plaintiff personally observed Ms. Valdez leaving SDF8 for two-hour (2-hour) lunches, while on the clock;

65. That Plaintiff, frustrated both by the lack of assistance from her fellow operations supervisors and the fact that she was falling behind in her areas because of the lack of assistance, complained to Mr. Call about the issues she was having during the weekly, one-on-one meetings;

66. That, again, Mr. Call emphasized to her fellow supervisors that they should be helping Plaintiff learn the skills to perform all of the tasks in the Operations Department during weekly operations department meetings so each supervisor could pick up the slack if one of the supervisors happened to be absent;

67. That Ms. Valdez, Ms. Prim, and Mr. Able ignored Mr. Call's directives from the first meeting, and either refused or ignored Plaintiff's requests for assistance;

68. That due to the continued lack of assistance from her fellow supervisors, Plaintiff, again, complained to Mr. Call, who held another meeting, and instructed the other supervisors to help Plaintiff in her areas;

69. That after Mr. Call's second directive to the operations supervisors to help Plaintiff in her areas, Ms. Valdez and Ms. Prim, in retaliation for reporting their lack of assistance and poor behavior, began a *daily* pattern of harassing, intimidating, and assaulting Plaintiff based on her age and disabilities;

70. That on numerous occasions, Ms. Valdez and Ms. Prim would approach Plaintiff and other coworkers engaging in a group discussion about work tasks, and

interrupt the conversation just to harass and taunt about Plaintiff's age by calling her "grandma," "geriatric," and "senile;"

71. That often, Ms. Valdez would ask Plaintiff, "What's wrong, grandma? Are you in menopause;"

72. That Ms. Prim would respond, "No, she's just an idiot;"

73. That Plaintiff, on account of being nearly deaf in her left ear, wears a hearing aid;

74. That even when wearing the aid, Plaintiff's hearing is still limited in her left ear;

75. That Ms. Valdez and Ms. Prim, acting on the knowledge that Plaintiff is nearly deaf, on numerous occasions would approach Plaintiff from behind and scream in her ears to frighten and startle her;

76. That further, Ms. Valdez and Ms. Prim's behavior was not limited to verbal insults, but crossed the line into physical assaults;

77. That on a particular occasion, Ms. Valdez and Ms. Prim approached Plaintiff from behind, Ms. Valdez grabbed Plaintiff, violently pulled her hair, screamed "grandma" into Plaintiff's ears;

78. That Ms. Valdez and Ms. Prim laughed while Plaintiff freed herself from Ms. Valdez's grip;

79. That Plaintiff was shocked and appalled by Ms. Valdez and Ms. Prim's behavior, and told the pair, "you all are ridiculous;"

80. That Ms. Prim responded, "look, grandma is getting mad;"

81. That Ms. Valdez chimed in, "what are you going to do grandma? You think you can whoop us;"

82. That Plaintiff responded, "Norma [Valdez], do not put your hands on me ever again;"

83. That Mr. Kyle Hinkebeine was present while the altercation took place, and asked Ms. Valdez and Ms. Prim, "seriously, what is wrong with you two;"

84. That the pair finally walked away, and Plaintiff hurried to the bathroom to prevent her coworkers and other employees from seeing her break down in tears because of the way she had been treated;

85. That initially, Plaintiff did not report these incidents out of the fear that the retaliatory harassment, intimidation, and assaults would get worse, and that complaining would place her job in jeopardy;

86. That Mr. Hinkebeine, Mr. Deke Lowery, and Mr. Dan Brown worked closely with Plaintiff in the Operations Department at SDF8, and witnessed Ms. Valdez and Ms. Prim's treatment of Plaintiff on a daily basis;

87. That Ms. Barnes returned from maternity leave in January 2014;

88. That two (2) weeks after the above altercation, Plaintiff reached her breaking point after yet another incident occurred involving Ms. Valdez and Ms. Prim;

89. That every Tuesday at SDF8, upper management holds a morning meeting where breakfast is provided by an employee on a rotating basis;

90. That it was Plaintiff's turn to provide breakfast, so she reported to work early to set up the food and beverages she had purchased;

91. That after arranging the food and beverages, Plaintiff waited in the conference room for her coworkers to arrive;

92. That Mr. Erik Snowbeck, other full-time photographers at SDF8, Krista Artis, the flat set Manager at SDF8, and Michelle Morad, the jewelry and watch manager at SDF8, were the first to arrive, and they exchanged pleasantries with Plaintiff;

93. That Mr. Snowbeck said to Plaintiff, "I'm surprised you are here.  From what Norma [Valdez] and Shala [Prim] said, you are always too drunk and hungover to function;"

94. That Plaintiff was shocked, embarrassed that such false information had been said in front of her peers, and told Mr. Snowbeck, "that is ridiculous;"

95. That the allegation was a complete fabrication;

96. That Plaintiff not only always maintained professional behavior while employed by Defendant Amazon, but her Type II Diabetes prevents her from consuming any alcohol;

97. That both Ms. Valdez and Ms. Prim knew Plaintiff had Type II Diabetes, as both had referred to Plaintiff as "grandma," not only because of her age, but because she is only able to drink alcohol in moderation during social gatherings of the employees at SDF8;

98. That as all of the employees were leaving the conference room following the meeting, Ms. Prim said to Plaintiff, "I can't believe you made it in today, grandma;"

99. That Plaintiff told the pair, "you all are both ridiculous, and I'm sick of your shit," and proceeded to relay the conversation she had just had with Mr. Snowbeck;

100.        That Ms. Valdez and Ms. Prim feigned ignorance, denied what Mr. Snowbeck had said, and left the conference room as quickly as they could;

101.    That after the pair had left, Plaintiff went to restroom and broke down in tears;

102.    That after she had gathered herself, Plaintiff immediately emailed Ms. Barnes to set up an additional one-on-one meeting;

103.    That the one-on-one meeting occurred the Thursday following the Tuesday morning meeting in January 2014;

104.    That during the meeting, Plaintiff told Ms. Barnes everything about the personal hell Ms. Valdez and Ms. Prim were putting her through for months;

105.    That specifically, Plaintiff complained about the above incidents, and Ms. Valdez and Ms. Prim's daily pattern of harassing, intimidating, and assaulting Plaintiff in regard to her age and disabilities;

106.    That Ms. Barnes, despite being the Operations Manager at SDF8, and thus, responsible for disciplining employees, continually asked Plaintiff, "how do you want me to handle [the situation];"

107.    That Plaintiff responded that she did not know how to handle the situation, as she was just a supervisor;

108.    That Ms. Barnes eventually decided to hold a meeting where Plaintiff, Ms. Valdez, and Ms. Prim were required to attend, and sent an email on Friday to verify that the meeting would be held the following Monday;

109.    That Ms. Valdez and Ms. Prim cornered Plaintiff on Friday before she left SDF8 for the weekend, and questioned her about why the meeting was being held;

110.    That, to avoid another incident, Plaintiff denied knowing the reason the meeting was being held;

111.     That, after Ms. Valdez and Ms. Prim walked away, Plaintiff heard the pair discussing the meeting;

112.     That Ms. Prim told Ms. Valdez, "I guess [Plaintiff] has been running her mouth to Lisa;"

113.     That Ms. Valdez responded, "[Plaintiff] is a fucking bitch, and I will find out what this is all about.  We will take care of [Plaintiff] later;"

114.     That during the meeting, Ms. Barnes discussed all of the issues and incidents with Ms. Valadez and Ms. Prim that plaintiff had brought up during their one-on-one meeting on Thursday;

115.     That, however, Ms. Barnes acted as if she at heard all of the complaints from a third party;

116.      That Ms. Valdez and Ms. Prim did not believe that the complaints had come from a third party;

117.     That plaintiff new immediately she would be subject to more retaliation from Ms. Valadez and Ms. Prim;

118.     That Ms. Barnes made it explicitly clear to Ms. Valadez and Ms. Prim that the behavior was unacceptable and that Ms. Barnes will be forced to escalate the disciplinary measures if the behavior did not stop;

119.     That following the meeting, Ms. Barnes' attitude towards plaintiff became cool and detached, and Ms. Valdez and Ms. Prim's attitude and behavior towards plaintiff did not improve, but, became even worse;

120.     That on top of continuing their harassment based on plaintiff's age and disabilities, Ms. Valdez and Ms. Prim would falsely report to Ms. Barnes that

plaintiff was on her phone during work time or not working in her assigned task areas (either of which was the case), and further, Ms. Valdez and Ms. Prim would withhold important information in regard to team efforts for the Operations Department in an attempt to make Plaintiff appear as if she were stupid in front of management;

121.    That shortly after the meeting held by Ms. Barnes with Ms. Valdez, Ms. Prim, and Plaintiff, plaintiff was given her annual performance review;

122.    That despite not receiving the necessary training, Ms. Barnes blamed all of the issues with the "Color-Author" program on plaintiff;

123.    That despite a photographer making unauthorized changes that plaintiff was not responsible for, Ms. Barnes blamed all of the issues with the "Kaisan" project on plaintiff;

124.    That further, Ms. Barnes informed plaintiff she would not be receiving a raise, despite performing admirably with little to no help from her fellow operations supervisors;

125.    That plaintiff asked Ms. Barnes if there was anyway she could contest the performance review;

126.    That plaintiff disagreed with the performance review in its entirety, however, specifically, plaintiff told Ms. Barnes she disagreed with "Color-Author" program comments because plaintiff had requested, practically begged, for the additional necessary resources to perform her job responsibilities correctly, and she was ignored by Ms. Barnes each time she had made a request;

127.    That Ms. Barnes told plaintiff she could not contest the evaluation, despite defendant Amazon having specific HR policies allowing employees to contest their performance reviews;

128.    That before plaintiff even left SDF8 for the day, she received an email and three (3) instant messages from Ms. Barnes telling her to sign the performance review;

129.    That, essentially, plaintiff was strong-armed into signing the performance review, and lied to about her options of recourse;

130.    That further, during the meeting where plaintiff was given her performance review, plaintiff informed Ms. Barnes that she was returning to school to finish her degrees, and she was wondering Ms. Barnes and defendant Amazon would be willing to work with her in regard to her class schedule;

131.    That Ms. Barnes told plaintiff this would not be an issue;

132.    That, in fact, Ms. Barnes told plaintiff that she would be willing to help her learn the different operations programs used at SDF8 if plaintiff wanted to advance in the operations department at defendant Amazon, as Ms. Barnes was presumably making such an offer under the assumption that plaintiff was going to school for such a purpose;

133.    That plaintiff informed Ms. Barnes that, unfortunately she did not want to advance in operations, but, was seeking a position in her field, as she was returning to school to finish both her English in Journalism degrees;

134.    That Ms. Barnes did not take this information well, and had previously showed her distaste for those leaving the operations department to move into another area at SDF8;

135.    That, for example, when plaintiff was working on the "Color-Author" program, and Mr. Bibeck Basnath, the photography studio manager at SDF8, indicated that he wanted plaintiff to receive training to take photos for the "Color-Author" program because of her educational background, plaintiff told Ms. Valadez about the opportunity, and Ms. Valadez shared the information with Ms. Barnes;

136.    That Ms. Barnes told Ms. Valadez, "[Plaintiff] is on ops and once you were on ops team you staying on ops team. I hate when people try to get their foot in the door just a move onto another area;"

137.    That despite Ms. Barnes obvious disapproval, Ms. Barnes informed plaintiff later that she could begin coming into SDF8 at 6:30 AM and leave at 3:00 PM so she would have time to make it to her class;

138.    Then Ms. Barnes never told the rest of the staff, including her fellow supervisors, that plaintiff's schedule would be changing and she would be coming in early, leading Ms. Valdez, Ms. Prim, and Mr. Able to assume plaintiff was going to be promoted over them, which only increased the retaliatory harassment being perpetrated against Plaintiff;

139.    That Plaintiff continually reported each instance of age and disability-related harassment from Ms. Valdez and Ms. Prim, and the refusals by Ms. Valdez, Ms. Prim, and Mr. Able to train her in necessary tasks to Ms. Barnes in

their weekly one-on-one meetings, however, Ms. Barnes took no steps to stop this daily pattern of harassment and discrimination;

140.     That realizing Ms. Barnes was unwilling to take an disciplinary measures against Ms. Valdez, Ms. Prim, and Mr. Able, on May 27, 2014, Plaintiff went to Mr. Greg Walsh, the General Manager of SDF8 (overseer of the entire facility), and complained about the age and disability-related harassment and discrimination she was being subjected to;

141.     That while Mr. Walsh was in his last week at SDF8, he told Plaintiff, "This is unbelievable.  You need to go to HR and filed a report;"

142.     That Plaintiff told Mr. Walsh that she had already complained to Ms. Barnes about her situation, and she feared that filing a report with HR would only increase the retaliation;

143.     That Mr. Walsh responded, "What choice do you have?  I have a meeting with Danielle Starns, and I will talk to her about your situation;"

144.     That Ms. Starns is Defendant Amazon's corporate Human Resources Director;

145.     That further, Mr. Walsh told Plaintiff, "You need to go to HR.  Talk to Jason Stefani, Michael Margolies, and Josh Watson;"

146.     That Mr. Stefani was the local Human Resources Manager at SDF8, Mr. Margolies was replacing Mr. Walsh as General Manager at SDF8, and Mr. Watson was the Midwest Studio Manager for Defendant Amazon;

147.     That Plaintiff agreed to take all of the steps suggested by Mr. Walsh;

148.    That, however, before she could take Mr. Walsh's suggestions, Plaintiff was called into Ms. Barnes office on June 2, 2014, and placed on a Performance Improvement Plan ("PIP");

149.    That the PIP contained unrealistic explanations, including that Plaintiff would be required to learn and master the computer programs for the Operations Department in three (3) weeks;

150.    That the PIP called for Plaintiff to receive training in the different computer programs from Ms. Valdez, Ms. Prim, and Mr. Able;

151.    That Plaintiff was supposed to receive this training from the very beginning of her time at SDF8, and had sought the training from her fellow supervisors, but, her requests were either ignored or denied by Ms. Valdez, Ms. Prim, or Mr. Able;

152.    That the PIP was for thirty (30) days, however, PIP's at Defendant Amazon are supposed to be for three (3) months;

153.    That in an attempt to comply with the terms of the PIP, Plaintiff tried to set up times to receive the necessary training, however, most of these requests, again, were ignored or refused by Ms. Valdez, Ms. Prim, and Mr. Able;

154.    That the PIP was also impossible to comply with by her fellow supervisors being absent on multiple days of the PIP;

155.    That Ms. Valdez was responsible for training Plaintiff to complete the NIL report, and the only individual at SDF8 with the training to complete the report, however, Ms. Valdez was absent for three (3) weeks of Plaintiff's thirty-day (30-day) PIP;

156.     That while Ms. Valdez received training for two (2) weeks in Cincinnati, Ohio, to complete the NIL report, Plaintiff was expected to learn the program in two (2) days;

157.     That Ms. Prim was responsible for training Plaintiff to use the computer programs utilized by SDF8 in regard to the jewelry and watch merchandise, however, Ms. Prim was absent for two (2) weeks of Plaintiff's thirty-day (30-day) PIP;

158.     That further, prior to being placed on the PIP by Ms. Barnes, SDF8 abandoned using the previously utilized computer programs in regard to the jewelry and watch merchandise, yet, Plaintiff was still held accountable for these programs in her thirty-day (30-day) PIP;

159.     That Mr. Able was responsible for training Plaintiff to complete SPS reports;

160.     That Mr. Able, instead of training Plaintiff, would complete the SPS before she would arrive at 6:00 AM, despite the report not being due until 11:00 AM;

161.     That when Plaintiff repeated her requests for the training to complete the SPS reports, and reiterated the importance of the training, Mr. Able responded, "I don't care;"

162.     That it is Plaintiff's belief that Ms. Barnes placed her on the PIP in retaliation for complaining to Mr. Walsh about the age and disability-related harassment and discrimination perpetrated by Ms. Valdez, Ms. Prim, and Mr. Able;

163.     That after being placed on the PIP, Plaintiff contacted Mr. Watson, Mr. Stefani, Mr. Margolies, and Ms. Starns to voice her complaints about the age and disability-related harassment and discrimination perpetrated by Ms. Valdez, Ms. Prim, and Mr. Able at SDF8;

164.     That while Mr. Watson, Mr. Stefani, and Ms. Starns all responded to her complaints through email or in person, Plaintiff's complaints fell on deaf ears, as no steps were taken by any of them to address the age and disability-related discrimination perpetrated by Ms. Valdez, Ms. Prim, and Mr. Able at SDF8;

165.     That, however, Mr. Stefani did tell Plaintiff that, "Your situation is so bad, I am going to have to escalate this to the corporate HR department," or, in other words, to Ms. Starns;

166.     That while on the PIP, Plaintiff was responsible for improving in one (1) key area a week;

167.     That Plaintiff accomplished these goals except for learning to complete the NIL report, which was an impossible task considering Ms. Valdez's repeated absences and the lack of the requisite time to become proficient in the computer program;

168.     That in the final days of the PIP, Plaintiff met with Ms. Barnes to discuss the events to come;

169.     That despite improving in all areas that were able to accomplished, Ms. Barnes told Plaintiff that the chances of remaining with Defendant Amazon "did not look good;"

170.   That Ms. Barnes said a week could be added to the PIP to allow Plaintiff to see if she could achieve proficiency in complete the NIL report;

171.   That, however, Ms. Valdez would be absent that week, making the goal unattainable, and in effect, pointless for Plaintiff to try and achieve;

172.   That Plaintiff, told Ms. Barnes, "So, no matter what I do, I am terminated;"

173.   That Ms. Barnes responded, "See [the situation] as it is.  You can either leave now, turn in your badge, and security will escort you out, or, add the week;"

174.   That Plaintiff, when informed of this no-win situation, decided to allow Ms. Barnes to terminate her then;

175.   That despite Ms. Valdez, Ms. Prim, and Mr. Able's lack of assistance (that are discussed in Ms. Barnes' notes from weekly one-on-one meetings), problems with the processes in the Operations Department over which Plaintiff had no control (that are discussed in Ms. Barnes' notes from weekly one-on-one meetings), and her best efforts to comply with the terms of the PIP (that are discussed in Ms. Barnes' notes from weekly one-on-one meetings), Plaintiff was terminated by Defendant Amazon on July 14, 2014;

176.   That following Plaintiff's termination, HR representatives from Defendant Amazon, on multiple occasions, attempted to offer Plaintiff a $2000.00 lump sum payment in exchange for executing a "Severance Agreement and General Release;"

177.    That, in fact, HR representatives even attempted to have Plaintiff execute the "Severance Agreement and General Release" after the deadline to do so had passed;

178.    That in retaliation for not executing the "Severance Agreement & General Release," Defendant Amazon challenged Plaintiff's application for unemployment benefits, after explicitly telling her it would not challenge her application for unemployment benefits;

179.    That prior to her termination, as a result of the stress of the daily pattern of age and disability-related harassment and discrimination, Plaintiff fell into a state of depression, and began seeing a therapist;

180.    That following her termination, as a result of the stress from the hostile work environment at Defendant Amazon and the depression she developed, Plaintiff was placed on anti-depression medication by her doctor;

181.    That, however, due to the fact that Plaintiff lost her health insurance upon being terminated by Defendant Amazon, Plaintiff was unable to continue her treatment with her therapist, or receive her anti-depression medication;

182.    That following her termination, as a result of the stress from the hostile work environment at Defendant Amazon and the depression she developed, Plaintiff lost over twenty (20) pounds;

183.    That following her termination, as a result of the stress from the hostile work environment at Defendant Amazon and the depression she developed, Plaintiff withdrew from the classes she enrolled in at Indiana University Southeast to finish the requirements for her dual degrees in English and Journalism;

## COUNT ONE: HOSTILE WORK ENVIRONMENT [AGE]

184.     That Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 183 above, as if fully set forth with particularity herein;

185.     That Plaintiff is forty-one (41) years-old, and therefore, a member of a protected class;

186.     That Plaintiff was subject to a daily pattern of unwelcome harassment, intimidation, and assaults perpetrated by Ms. Valdez, Ms. Prim, and Mr. Able;

187.     That the unwelcome harassment was based on Plaintiff's age;

188.     That as part of this daily pattern of unwelcome harassment, intimidation, and assaults perpetrated by Ms. Valdez, Ms. Prim, and Mr. Able, Plaintiff was derisively referred to as "grandma," "senile," "geriatric," and numerous other age-related slurs;

189.     That the harassment was severe and pervasive enough so as to alter the conditions of Plaintiff's environment and create a hostile and/or abusive working environment;

190.     That there is a basis for Defendant Amazon's liability;

191.     That Plaintiff complained about the age-related, daily pattern of unwelcome harassment, intimidation, and assaults to Ms. Barnes, Mr. Call, Mr. Walsh, Mr. Margolies, Mr. Stefani, Ms. Starns, however, no actions were ever taken to correct the age-related hostile work environment being perpetrated by Ms. Valdez, Ms. Prim, and Mr. Able;

192.     That Plaintiff, having show that she was subjected to a hostile work environment because of her age, to her detriment, has suffered, and will continue

to suffer, monetary losses based on loss of income, and any and all benefits accrued by Plaintiff during her employment with Defendant Amazon;

## COUNT TWO: DISCRIMINATION ON THE BASIS OF AGE

193.     That Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 192 above, as if fully set forth with particularity herein;

194.     That Plaintiff is forty-one (41) years-old;

195.     That Plaintiff performed her job according to Defendant Amazon's legitimate expectations;

196.     That Plaintiff suffered an adverse employment action;

197.     That Plaintiff, *inter alia*, was terminated July 14, 2014;

198.     That similarly-situated employees under the age of 40 were treated more favorably by Defendant Amazon;

199.     That Ms. Valdez, Ms. Prim, and Mr. Able, all under the age of forty (40), were given unlimited training, allowed to miss work whenever they wanted, took extended lunches while on the clock, always given good performance reviews, and numerous other privileges by Ms. Barnes;

200.     That Plaintiff was not offered the same privileges by Ms. Barnes;

201.     That Plaintiff, having shown she was treated differently because of her age, to her detriment, has suffered, and will continue to suffer, monetary losses based on loss of income, and any and all benefits accrued by Plaintiff during her employment with Defendant Amazon;

## COUNT THREE: HOSTILE WORK ENVIRONMENT DISABILITY

202.     That Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 201 above, as if fully set forth with particularity herein;

203.     That Plaintiff is disabled;

204.     That Plaintiff has Type II Diabetes;

205.     That Plaintiff is seventy-percent (70%) deaf in left ear, which requires the use of a hearing aid, and forty-percent (40%) deaf in her right ear;

206.     That the harassment was based on Plaintiff's disabilities;

207.     That as part of a daily pattern of unwelcome harassment, intimidation, and assaults based on Plaintiff's disabilities, Ms. Valdez and Ms. Prim would sneek up behind Plaintiff and scream slurs in her ears, the pair would pull her hair, and insult Plaintiff for not being able to drink alcohol in mass quantities;

208.     That the harassment was severe and pervasive enough so as to alter the conditions of Plaintiff's environment and create a hostile and/or abusive working environment;

209.     That there is a basis for Defendant Amazon's liability;

210.     That Plaintiff complained about the disability-related, daily pattern of unwelcome harassment, intimidation, and assaults to Ms. Barnes, Mr. Call, Mr. Walsh, Mr. Margolies, Mr. Stefani, and Ms. Starns, however, no actions were ever taken to correct the disability-related hostile work environment being perpetrated by Ms. Valdez and Ms. Prim;

211.     That Plaintiff, having show that she was subjected to a hostile work environment because of her age, to her detriment, has suffered, and will continue

to suffer, monetary losses based on loss of income, and any and all benefits accrued by Plaintiff during her employment with Defendant Amazon;

## COUNT FOUR: DISCRIMINATION ON THE BASIS OF DISABILITY

212.     That Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 211 above, as if fully set forth with particularity herein;

213.     That Plaintiff is disabled;

214.     That Plaintiff was otherwise qualified for the position with or without reasonable accommodation;

215.     That Plaintiff suffered an adverse employment action;

216.     That Plaintiff, *inter alia*, was placed on a PIP and terminated on July 14, 2014;

217.     That Defendant Amazon had reason to know of Plaintiff's disability;

218.     That Plaintiff, having shown she was treated differently because of her disabilities, to her detriment, has suffered, and will continue to suffer, monetary losses based on loss of income, and any and all benefits accrued by Plaintiff during her employment with Defendant Amazon;

## COUNT FIVE: RETALIATION [AGE]

219.     That Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 218 above, as if fully set forth with particularity herein;

220.     That Plaintiff engaged in a protected activity;

221.     That Plaintiff voiced her age-related discrimination concerns to Ms. Barnes, Mr. Call, Mr. Walsh, Mr. Margolies, Mr. Stefani, and Ms. Starns;

222.    That Defendant Amazon was aware of the protected activity taken by Plaintiff;

223.    That by informing Ms. Starns, Defendant Amazon's corporate HR Director, Defendant Amazon was aware Plaintiff was engaged in a protected activity;

224.    That Defendant Amazon took adverse employment action against Plaintiff;

225.    That Plaintiff, *inter alia*, was placed on a PIP and terminated July 14, 2014;

226.    That a causal connection existed between the protected activity and the adverse employment action;

227.    That Plaintiff was placed on the PIP when she returned to work the following week after complaining to Mr. Walsh, a mere five (5) days later;

228.    That Plaintiff, having shown she was retaliated against for making age discrimination complaints, has suffered, and will continue to suffer, monetary losses based on loss of income, and any and all benefits accrued to Plaintiff during her employment with Defendant Amazon;

## COUNT SIX: RETALIAITON [DISABILITY]

229.    That Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 228 above, as if fully set forth with particularity herein;

230.    That Plaintiff engaged in a protected activity;

231.    That Plaintiff voiced her disability-related discrimination concerns to Ms. Barnes, Mr. Call, Mr. Walsh, Mr. Margolies, Mr. Stefani, and Ms. Starns;

232.     That Defendant Amazon was aware of the protected activity taken by Plaintiff;

233.     That by informing Ms. Starns, Defendant Amazon's corporate HR Director, Defendant Amazon was aware Plaintiff was engaged in a protected activity;

234.     That Defendant Amazon took adverse employment action against Plaintiff;

235.     That a causal connection existed between the protected activity and the adverse employment action;

236.     That Plaintiff, having shown she was retaliated against for making age discrimination complaints, has suffered, and will continue to suffer, monetary losses based on loss of income, and any and all benefits accrued to Plaintiff during her employment with Defendant Amazon;

**WHEREFORE**, the Plaintiff, Jennifer Schook, prays that this Court;

1.  Declare Defendant Amazon's conduct in violation of Ms. Schook's right;

2.  Aware Ms. Schook compensatory damages in such amounts as must be proved at trial for her economic and other losses;

3.  Award Ms. Schook damages, and mental aguish, which Defendant Amazon caused Ms. Schook by its illegal, tortious, and discriminatory acts toward her;

4.  Award Ms. Schook punitive damages against Defendant Amazon for the serious intentional wrongs committed against her; alleged herein above;

5.  Award Ms. Schook costs, interest, and attorneys' fees;

6.  Declare the termination of Ms. Schook as discrimination in violation of her civil rights;

7.  Grant Ms. Schook such further relief as this Court may deem just and proper;

## **JURY DEMAND**

Plaintiff, Jennifer Schook, demands a jury to all issues triable by jury.

Respectfully submitted,

Samuel G. Hayward
Adams Hayward & Welsh
4036 Preston Highway
Louisville, KY 40213
(502) 366-6456
*Counsel for Plaintiff*

## VERIFICATION

I, Jennifer Schook, have read the foregoing and the matters of fact therein set forth are true, as I verily believe.

Executed in ___Jefferson___ County, Kentucky, this ___26th___ day of ___May___, 2015.

_Jennifer Schook_ (signature)

Jennifer Schook

COMMONWEALTH OF KENTUCKY )
                                     )SCT.
COUNTY OF ___Jefferson___ )

Sworn, subscribed to and acknowledged before me, a Notary Public, within and for the Commonwealth of Kentucky at large, by Jennifer Schook this _26_ day of _May_, 2015.

My Commission Expires: _3/12/18_

_S. Hayward_ (signature)

NOTARY PUBLIC,
STATE AT LARGE, KY